UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| ROSEMARIE H. ESTEP, | )<br>) |
| Plaintiff, | )<br>) Civil No. 15-44-ART<br>) |
| v. | )<br>) |
| UNITED MINE WORKERS OF AMERICA 1974 PENSION PLAN AND TRUST, | ) **MEMORANDUM OPINION AND**<br>) **ORDER**<br>)<br>) |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A man marries a woman, retires, divorces, marries another woman, then passes away. Which of his two wives is entitled, under the terms of his employee-benefit plan, to surviving-spouse benefits? At first blush, the answer might seem to be "the second wife." After all, she was married to him when he died and is therefore the most natural candidate for the title of "surviving spouse." But federal law recognizes that, although the second wife was with him when he died, the first was with him when he worked to earn his benefits. For this reason, the Employee Retirement Income Security Act of 1975 ("ERISA") permits employee-benefit plans to award surviving-spouse benefits to the first wife alone.

That is what happened here. Under the terms of the United Mine Workers of America 1974 Pension Plan and Trust ("the Plan"), a surviving spouse is entitled to benefits only if she was married to the Plan participant during the nine months before he retired. Thus, when a participant named David Estep died, the Plan awarded surviving-spouse benefits to David's first wife, Josephine, and denied those benefits to his second wife, Rosemarie. Rosemarie

then sued the Plan under ERISA, asking for a judgment that she is entitled to surviving-spouse benefits. The Plan now moves to dismiss Rosemarie's suit for failure to state a claim on which relief can be granted. R. 6; *see* Fed. R. Civ. P. 12(b)(6). For the reasons stated below, that motion is granted**.**

### I.

### A.

Under the terms of the Plan, a spouse who survives a Plan participant is sometimes entitled to a "surviving-spouse benefit," *i.e.*, "75% of the amount of the [participant's] pension at the time of [his] death." R. 6-2 at 31 (copy of the Plan). When the Plan was drafted initially, it provided that a spouse could receive such a benefit if she was "married [to the participant] throughout the nine-month period ending on the date of the [p]articipant's death." R. 1-1 at 1. The Plan was then amended in 2011. Under its new terms, a surviving spouse is entitled to benefits only if she was "married [to the participant] throughout the nine month period ending" on the earlier of "the date of the participant's death" or "the participant's annuity starting date," that is, the date the participant retired and began receiving his pension. R. 1-2 at 1.

It is not clear from the record why the Plan's terms were amended. The most likely explanation, however, is that ERISA itself was amended. When that law was first passed, surviving-spouse benefits "were payable to the surviving spouse only if the surviving spouse was married to the participant on both the date of the participant's retirement and the date of the participant's death." *Hopkins v. AT&T Glob. Info. Sols. Co.*, 105 F.3d 153, 156 (4th Cir. 1997). Now, though, ERISA provides that such benefits "may be paid to a spouse who was

2

married to the participant on the date of the participant's retirement, regardless of whether that spouse is married to the participant on the date of the participant's death."[1] *Id.* Congress made these amendments to "take into account changes in work patterns, the status of marriage as an economic partnership, and the substantial contribution to that partnership of spouses who work both in and outside the home." *Carmona v. Carmona*, 603 F.3d 1041, 1058 (9th Cir. 2008) (internal quotation marks omitted). For example, under the prior regime, a wife who worked in the home while her husband worked in a factory—and ultimately earned a pension—would receive no benefits if the couple divorced after her husband retired. Under current law, however, a plan may give the wife benefits in recognition of the "economic partnership" to which she "substantial[ly] contribut[ed]" while working in the home. *Id.*

**B.**

David Estep, a participant in the Plan, married Josephine Estep in 1970. He was still married to her in 1994, when he began receiving his pension. The couple divorced five years later after 29 years of marriage. R. 1-3 at 4. In 2001, David married the plaintiff, Rosemarie Estep. R. 1 at 1. They remained married for twelve years, until David died in 2013. *Id.* Josephine then applied for surviving-spouse benefits, which the Plan granted to her. *See* R. 1-3 at 1.

Rosemarie later applied for those same benefits. The Plan denied her application and likewise denied her administrative appeal. *Id.* at 2. She then sued the Plan under ERISA, which allows a plaintiff to sue "to recover benefits due to him under the terms of his plan, to

---

[1] This is precisely what the Plan provides.

enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Specifically, Rosemarie asked in her complaint for a judgment that she is "eligible for surviving[-]spouse disability benefits." R. 1 at 3. The Plan now moves to dismiss. R. 6; *see* Fed. R. Civ. P. 12(b)(6).

## II.

If an employee-benefits plan grants the administrator authority either to determine eligibility or to construe the terms of the plan, then a court reviews the administrator's decision "under the deferential arbitrary and capricious standard[.]" *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotation marks omitted). The Sixth Circuit has already decided that this particular Plan grants the administrator such authority. *See, e.g.*, *Baker v. UMWA Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991); *Ball v. Holland¸* 142 F. App'x 860, 862 (6th Cir. 2005). Thus, this Court must ultimately uphold the Plan's decision so long as it was not arbitrary or capricious. *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009). At the motion-to-dismiss stage, therefore, the question presented is whether the facts in the complaint, taken as true, "plausibl[y]" show that the Plan's decision was arbitrary and capricious. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]

---

[2] The procedural posture of this case is somewhat unusual. District courts typically apply the "arbitrary and capricious" analysis after a motion for summary judgment (or a motion for judgment). *See generally Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 617 (Gilman, J., concurring) (discussing the "great confusion among the district courts as to the proper method of adjudicating proceedings brought under [ERISA,] 29 U.S.C. § 1132(a)(1)(B)."). When a defendant moves to dismiss an ERISA suit under Fed R. Civ. P. 12(b)(6), some district courts reject those motions on procedural grounds, noting that "[arguing] that the [plan's] decision was not arbitrary and capricious [is] different from arguing that Plaintiff's complaint fails to state a claim." *Tomlin v. Laborers Pension Tr. Fund*, 2006 WL 177251 at *1 n.1 (E.D. Mich. Jan. 24, 2006). But other district courts do things differently; they proceed directly to the arbitrary-and-capricious analysis and never discuss whether the complaint itself states a claim. *See e.g.*, *Rayle v. Wood Cty. Hosp.*, 2013 WL 1654898 (N.D. Ohio April 16, 2013). Here, however, the result is the same under either standard of review. For the reasons stated below, Rosemarie's

Under the terms of the Plan, a spouse is not entitled to a surviving-spouse benefit unless "the [Plan participant] and the spouse [had] been married throughout the nine-month period ending on the earlier of the participant's annuity starting date or the date of the participant's death." R. 6-2 at 31. Here, David began receiving his annuity in July 1994 and did not die until 2013. Hence the "earlier" nine-month period is October 1993 to July 1994. That means Rosemarie is eligible for surviving-spouse benefits only if she was married to David during that time period.

As it turns out, Rosemarie was not married to David during that period; Josephine was. Rosemarie and David did not get married until seven years later, in 2001. Rosemarie admits as much in her complaint. *See* R. 1 at 2. Thus, the complaint does not allege that Rosemarie was married to David "throughout the nine-month period ending on the earlier of the participant's annuity starting date or the date of the participant's death." R. 6-2 at 31. Under the Plan's explicit terms, therefore, she was not entitled to surviving-spouse benefits. Hence the complaint does not state facts that "plausibly" show that the Plan's decision to deny her those benefits was either arbitrary or capricious.

Rosemarie responds in two ways. First, she points out in her complaint that the earlier version of the Plan did not require a surviving spouse to have been married to the participant for the nine months prior to his annuity start date. That version provided instead that a surviving spouse was entitled to benefits so long as she was married to the Plan participant "throughout the nine-month period ending on the date of the Participant's death."

---

complaint does not plausibly allege that the Plan acted arbitrarily or capriciously. That means the Plan is entitled to dismissal even if this Court applied the traditional—and more-plaintiff-friendly—standard laid out in Rule 12(b)(6). Hence this Court will not wade into the current district court split.

5

R. 1 at 2. Since that version was the one in effect at the time of David's "annuity starting date" in 1994, Rosemarie argues, her rights "vested" as of that date, and the later revisions to the Plan are irrelevant. *Id.* at 3.

The problem with that argument, of course, is that Rosemarie was not married to David in 1994. Josephine was. Thus, if the rights of anyone vested in 1994, they were the rights of Josephine (David's spouse in 1994) not those of Rosemarie (David's spouse seven years in the future). The Fourth, Fifth, and Ninth Circuits have all held exactly that. *See Hopkins*, 105 F.3d at 157 ("[W]e conclude that the Surviving Spouse Benefits vest in the participant's current spouse on the date the participant retires."); *Rivers v. Cent. & S. W. Corp.*, 186 F.3d 681, 683 (5th Cir. 1999) ("[B]enefits irrevocably vest in the plan participant's current spouse on the date of the participant's retirement."); *Carmona*, 603 F.3d at 1057 ("[T]he annuity starting date . . . is the point at which the surviving[-]spouse benefits vest in the participant's spouse."). And Rosemarie points to no court that has ever held otherwise. So this argument fails.

Second, Rosemarie advances an entirely different argument in her opposition brief. There she argues that Josephine "waived her right to the Pension" by separating from David in 1997. R. 10 at 4. Because Josephine waived her right, the argument seems to go, David was free to assign the surviving-spouse benefit to Rosemarie. And because David designated Rosemarie as his only beneficiary when he married her, Rosemarie seems to argue, she is entitled to surviving-spouse benefits under the Plan. *Id.* at 2–4.

As an initial matter, the complaint nowhere alleges that David and Josephine separated in 1997, which means that it does not allege sufficient facts to state a claim under

6

Rosemarie's new waiver-by-separation theory. The bigger problem with that theory, though, is that it is completely foreclosed by federal law. Rosemarie argues that Josephine waived her rights via a specific provision of ERISA, namely 29 U.S.C. § 1055(c)(2). To waive a benefit under that provision, a spouse must do so during "the 180-day period ending on the annuity starting date." *Id.* § 1055(c)(1)(A), (c)(7)(A). Josephine and David did not (allegedly) separate until three years after that date. Thus, the separation could not have been a valid waiver under § 1055(c)(2). So this argument fails as well.

In sum, the Plan's terms make clear that, if a Plan participant survives past the "annuity starting date," the spouse married to the participant for the nine months prior to that date is the spouse entitled to the surviving-spouse benefit. Josephine was married to David on his annuity starting date, not Rosemarie. The Plan's decision to award surviving-spouse benefits to Josephine rather than Rosemarie was therefore a reasonable one. After all, Josephine was a member of the "economic partnership" that ultimately secured David's pension upon his retirement; Rosemarie, who came along years later, was not. Indeed, the Fourth Circuit has gone so far as to say that, under ERISA, surviving-spouse benefits "may not be paid to a spouse who marries a [plan] participant after the participant's retirement." *Hopkins*, 105 F.3d at 157 n.6. Thus, there is a reasonable argument that the Plan was not only permitted but indeed required to deny Rosemarie's claim for those benefits. This Court need not venture so far, however. The Plan's decision to deny her claim was at the very least a reasonable interpretation of the Plan's terms. The complaint therefore does not allege facts that plausibly show that the Plan's decision was arbitrary or capricious.

7

8

Accordingly, it is **ORDERED** that the defendant's motion to dismiss, R. 6, is **GRANTED**. All pending deadlines and hearings are **CANCELED**. The Clerk of the Court shall strike this case from the Court's active docket. A separate judgment will issue.

This the 15th day of September, 2015.

Signed By:
*Amul R. Thapar* AT
United States District Judge